# EXHIBIT A

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT<br>Cook COUNTY | SUMMONS | For Court Use Only |
|---|---|---|

PERSONALLY SERVED 11/17/23

RECEIVED
SUSSEX COUNTY SHER

2023 NOV 13  A 10: 2

| Instructions ▾ | | |
|---|---|---|
| Enter above the county name where the case was filed. | BROOKFIELD PROPERTIES RETAIL INC., et al.<br>**Plaintiff / Petitioner** *(First, middle, last name)* | AT  9:00  AM/PM |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br>SELECTIVE INSURANCE COMPANY OF AMERICA<br>**Defendant / Respondent** *(First, middle, last name)* | CORPORATE SECURITY DESK<br><br>2023CH06917<br>**Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☑ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

| IMPORTANT INFORMATION: | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.<br><br>E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.<br><br>Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms.  You can also get free legal information and legal referrals at illinoislegalaid.org. |
|---|---|
| Plaintiff/Petitioner: | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.<br><br>If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| | |
|---|---|
| In 1a, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** **Defendant/Respondent's address and service information:**<br>    a.    Defendant/Respondent's primary address/information for service:<br>        Name *(First, Middle, Last)*:   c/o Michael H. Lanza - Secretary<br>        Registered Agent's name, if any: _____<br>        Street Address, Unit #:   40 Wantage Avenue<br>        City, State, ZIP:  Branchville, NJ 07890<br>        Telephone: _____  Email: _____ |
| In 1b, enter a second address for Defendant/ Respondent, if you have one. | b.    If you have more than one address where Defendant/Respondent might be found, list that here:<br>        Name *(First, Middle, Last)*: _____<br>        Street Address, Unit #: _____<br>        City, State, ZIP: _____<br>        Telephone: _____  Email: _____ |
| In 1c, check how you are sending your documents to Defendant/ Respondent. | c.    Method of service on Defendant/Respondent:<br>        ☐ Sheriff        ☑ Sheriff outside Illinois:  Sussex County, NJ<br>                                    *County & State*<br>        ☐ Special process server        ☐ Licensed private detective |

Enter the Case Number given by the Circuit Clerk: 2023CH06917

> In 2, enter the amount of money owed to you.

**2.** **Information about the lawsuit:**
Amount claimed: $ _____

> In 3, enter your complete address, telephone number, and email address, if you have one.

**3.** **Contact information for the Plaintiff/Petitioner:**
Name *(First, Middle, Last):* _____
Street Address, Unit #: _____
City, State, ZIP: _____
Telephone: _____ Email: _____

---

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

---

> **Important information for the person getting this form**

You have been sued. Read all of the documents attached to this *Summons*.
To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/.

---

> Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

**4.** **Instructions for person receiving this *Summons* (Defendant):**

☑ a. To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:
Address: 50 W. Washington St., #80
City, State, ZIP: Chicago, IL 60602

> In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.*

☐ b. Attend court:
On: 11/27/2023 at 09:30 ☑ a.m. ☐ p.m. in 2305
    *Date*      *Time*             *Courtroom*
**In-person at:**
50 W. Washington Street    Chicago      IL    60602
*Courthouse Address*      *City*         *State*     *ZIP*
OR

> In **4b**, fill out:
> • The court date and time the clerk gave you.
> • The courtroom and address of the court building.
> • The call-in or video information for remote appearances (if applicable).
> • The clerk's phone number and website. All of this information is available from the Circuit Clerk.

**Remotely (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):**
By telephone: _____
            *Call-in number for telephone remote appearance*
By video conference: _____
            *Video conference website*

_____
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk at: _____ or visit their website
            *Circuit Clerk's phone number*
at: _____ to find out more about how to do this.
    *Website*

---

> **STOP!**
> The Circuit Clerk will fill in this section.

**Witness this Date:** _____     *Seal of Court*

**Clerk of the Court:** _____

> **STOP!**
> The officer or process server will fill in the Date of Service.

**This *Summons* must be served within 30 days of the witness date.**

Date of Service: _____
            *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

---

SU-S 1503.2                         (06/21)

## Directory of Superior Court Civil Division Offices

**Atlantic County**
Civil Case Management Office
Atlantic County Civil Courthouse
1201 Bacharach Blvd.
Atlantic City, NJ 08401
(609) 402-0100 **ext. 47594**

**Bergen County**
Civil Division Case Management
Office
Bergen County Justice Center
10 Main St., Room 415
Hackensack, NJ 07601
(201) 221-0700 **ext. 25210**

**Burlington County**
Civil Division Case Management
Office
Burlington County Courts
Facility, 1st Floor
49 Rancocas Road
Mt. Holly, NJ 08060
(609) 288-9500 **ext. 38091**

**Camden County**
Camden County Hall of Justice
101 South 5th Street, Suite 150
Camden, NJ 08103-4001
(856) 650-9100 **ext. 43160**

**Cape May County**
Civil Division Case Management
Office
Cape May Court House
DN-203 Central Mail Room
9 N. Main Street
Cape May Court House, NJ 08210
(609) 402-0100 **ext. 47910**

**Cumberland County**
Civil Division Case Management
Office
Cumberland County Courthouse
60 West Broad Street
Bridgeton, NJ 08302
(856) 878-5050 **ext. 15390**

**Essex County**
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Blvd.
Newark, NJ 07102
(973) 776-9300 **ext. 56800**

**Gloucester County**
Civil Division Case Management
Office
First Floor, Court House
1 N. Broad St.
Woodbury, NJ 08069
(856) 878-5050 **ext. 15370**

**Hudson County**
Civil Division Case Management
Office
Brennan Courthouse
583 Newark Ave.
Jersey City, NJ 07306
(201) 748-4400 **ext. 60085**

**Hunterdon County**
Civil Division Case Management
Office
Hunterdon County Justice Center
65 Park Ave.
Flemington, NJ 08822
(908) 824-9750 **ext. 13810**

**Mercer County**
Civil Division Case Management
Office
Mercer County Civil Courts Building
175 S. Broad St., P.O. Box 8068
Trenton, NJ 08650-0068
(609) 571-4200 **ext. 74460**

**Middlesex County**
Civil Division Management Office
Middlesex County Courthouse
2nd Floor Tower
56 Paterson Street
P. O. Box 2633
New Brunswick, NJ 08903-2633
(732) 645-4300 **ext. 88171**

**Monmouth County**
Civil Division Case Management
Office
Monmouth County Courthouse
P.O. Box 1270
Freehold, NJ 07728-1270
(732) 358-8700 **ext. 87905**

**Morris County**
Civil Division Case Management
Office
Morris County Courthouse
P.O. Box 910
Morristown, NJ 07963-0910
(862) 397-5700 **ext. 75345**

**Ocean County**
Superior Court Civil Intake
118 Washington Street, Room 121
P. O. Box 2191
Toms River, NJ 08754-2191
(732) 504-0700 **ext. 64360**

**Passaic County**
Civil Division Case Management
Office
Passaic County Courthouse
77 Hamilton St.
Paterson, NJ 07505
(973) 653-2910 **ext. 24260**

**Salem County**
Civil Division Case Management
Office
Salem County Courthouse
92 Market Street
Salem, NJ 08079
(856) 878-5050 **ext. 15830**

**Somerset County**
Civil Division Case Management
Office
Somerset County Courthouse
40 N. Bridge St., P.O. Box 3000
Somerville, NJ 08876-1262
(908) 332-7700 **ext. 13710**

**Sussex County**
Sussex County Judicial Center
43-47 High St.
Newton, NJ 07860
(862) 397-5700 **ext. 75455**

**Union County**
Civil Division Case Management
Office
Union County Courthouse
2 Broad St., 1st Floor
Elizabeth, NJ 07207
Case Management (3rd Floor Tower)
Assignment (8th Floor Tower)
(908) 787-1650 **ext. 22120**

**Warren County**
Civil Division Case Management
Office
Warren County Courthouse
413 Second St.
Belvidere, NJ 07823
(908) 750-8100 **ext. 13910**

Hearing Date: 11/27/2023 9:30 AM
Location: Court Room 2305
Judge: Mclearn Meyerson, Pamela

FILED
7/27/2023 4:21 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH06917
Calendar, 11
23725109

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

BROOKFIELD PROPERTIES RETAIL INC.,
BROOKFIELD PROPERTIES R LLC,
WOODBRIDGE CENTER PROPERTY LLC,
WOODBRIDGE CENTER, LLC,

         Plaintiffs

v.

SELECTIVE INSURANCE COMPANY OF
AMERICA,

         Defendant.

Court No.    **2023CH06917**

PERSONALLY SERVED 11/17/23

AT 9:00 AM/PM

CORPORATE SECURITY DESK

### COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME the Plaintiffs, BROOKFIELD PROPERTIES RETAIL INC., BROOKFIELD PROPERTIES R LLC, WOODBRIDGE CENTER PROPERTY LLC, and WOODBRIDGE CENTER, LLC, by their attorneys, BEST, VANDERLAAN & HARRINGTON, and pursuant to Section 2-701 of the Illinois Code of Civil Procedure and for its Complaint for Declaratory Judgment against Defendant SELECTIVE INSURANCE COMPANY OF AMERICA ("SELECTIVE"), state as follows:

1.    All allegations made by Plaintiff herein are made in the alternative pursuant to 735 ILCS 5/2-604.2 and 735 ILCS 5/2-613.

2.    This matter arises out of a coverage dispute with regard to SELECTIVE's improper denial of additional insured coverage and a tender of defense and indemnity presented to SELECTIVE by Plaintiffs, in connection with the Underlying Lawsuit filed against Plaintiffs and SELECTIVE's insured, Liberty Service Sweeping LLC, in the Superior Court of New Jersey, Law Division, Middlesex County, as Docket No. MID-L-7222-20, by Elaine Hnyda and Thomas Hnyda against various defendants, including the Plaintiffs herein and SELECTIVE's

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

named insured, Liberty Service Sweeping, LLC ("the Underlying Lawsuit"). Please find a copy of the Underlying First Amended Complaint attached hereto as Exhibit "A".

3.    On multiple occasions, including June 9, 2020; October 12, 2020; December 4, 2020; December 7, 2020; December 18, 2020; January 27, 2021; March 19, 2021; April 1, 2021; May 12, 2021; April 26, 2022; August 2, 2022; August 12, 2022; August 16, 2022; August 26, 2022; October 10, 2022; March 15, 2023; and June 9, 2023; Plaintiffs tendered their defense and indemnity in connection with the Hnyda lawsuit to SELECTIVE and SELECTIVE's insured.

4.    SELECTIVE has denied the tenders and refused to provide coverage to Plaintiffs as additional insureds, insureds, contractual indemnitees, or on any other basis, and has refused Plaintiffs' tender of defense and indemnity in connection with the Hnydas' claims and Underlying Lawsuit.

## PARTIES AND BACKGROUND

5.    Plaintiffs are business entities whose parent company, Brookfield Properties Retail Holding, LLC, is a Delaware limited liability company, with a principal place of business located in Cook County, Illinois.

6.    The Underlying Lawsuit has alleged that Plaintiffs owned, occupied, operated, maintained, controlled, supervised, repaired, and/or inspected property commonly known as the Woodbridge Mall, 441 Woodbridge Center Drive in Woodbridge, New Jersey. *See* Exhibit "A".

7.    Defendant, SELECTIVE, is an insurance company licensed to conduct and conducting business in the State of Illinois, including but not limited to Cook County, Illinois.

8.    SELECTIVE issued an insurance policy to its named insured, Liberty Service Sweeping, LLC.

9.    SELECTIVE has been providing certain insurance coverage, including but not

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

necessarily limited to a defense, to Liberty Service Sweeping, LLC, in connection with the Underlying Lawsuit.

10.    On or about December 21, 2017, Woodbridge Center and Liberty Service Sweeping, LLC, entered into a Parking Lot Sweeping and Maintenance Agreement for services at the Woodbridge Mall.    *Please see* true and correct copy of said referenced Agreement, attached hereto as Exhibit "B".

11.    The Agreement was in effect from January 1, 2018, through December 31, 2020, and thus in effect on the day of the Plaintiff's alleged loss in the Underlying Lawsuit. *Id.*

12.    Pursuant to the Agreement, Liberty Service agreed that it:

> shall, to the fullest extent permitted by law, indemnify, hold
> harmless, defend and reimburse [Woodbridge Center] [and its
> affiliates] from and against any and all claims, damages, losses,
> liabilities, suits, expenses, citations and fines (including attorneys'
> fees and legal expenses) (collectively, "Claims") which arise out of
> or ***are in any way connected with***: (i) the Services performed
> under this Agreement, (ii) any negligence…or omission of
> [Liberty]…or (iii) any violation of this Agreement by [Liberty].

*Id.*

13.    Moreover, the Agreement included Exhibit B, Insurance Requirements, which sets forth various insurance requirements, including but not limited to the following:

**REQUIRED INSURANCE**
Service Provider shall furnish and maintain in effect during the term of the
Agreement the insurance coverage described below:

| **Commercial General Liability** | $2,000,000 Occurrence / $2,000,000 Aggregate |
|---|---|

…

**POLICY REQUIREMENTS**
…
The Commercial General Liability Insurance required shall name, as
"Additional Insureds", Owner (exactly as defined herein), GGPLP REIT
Services, LLC, GGP Inc. and General Growth Services, Inc.

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

> ...
> All Insurance policies required by this Agreement shall state that they are
> primary and not additional to, or contributing with, any other insurance
> carried by, or for the benefit of the Additional Insureds with respect to the
> negligence of Service Provider, its employees, agents, contractors and/or
> subcontractors.
> ...

*Id.*

14.     Thus, the Agreement required Liberty Service to furnish and maintain commercial general liability insurance during the term of the Agreement and to provide additional insured coverage on a primary and non-contributory basis to Plaintiffs. *Id.*

15.     In the Underlying Lawsuit, Plaintiffs filed a Motion for Summary Judgment against SELECTIVE's insured, Liberty Service Sweeping, which was granted on July 22, 2022, with the Court entering judgment in Plaintiffs' favor that they were owed contractual defense for the Underlying Lawsuit, pursuant to the Agreement, from Liberty Service Sweeping LLC, SELECTIVE's insured. *Please see* copy of summary judgment order attached hereto as Exhibit "C".

## JURISDICTION AND VENUE

16.     The Court has jurisdiction pursuant to 735 ILCS 5/2-701.  An actual, immediate and justiciable controversy exists between the parties named herein with respect to the coverage provided under the terms of the policies at issue and the obligations of the parties with respect to the Underlying Lawsuit.

17.     Venue properly lies with this Court pursuant to 735 ILCS 5/2-101 because one or more of the parties do business in Cook County, Illinois, and the Underlying Lawsuits to which this action pertains are pending in this County.

## THE UNDERLYING COMPLAINT

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

18.     On or about June 28, 2021, the Underlying Plaintiffs filed their Underlying First Amended Complaint, naming Plaintiffs and Liberty Service Sweeping, LLC, as defendants. Plaintiffs allege that on October 18, 2019, Elaine Hnyda sustained injury at the Woodbridge Mall "…when she was caused to trip and fall on broken rubber on ramp." *See* Exhibit A, ¶ 1.

19.     Underlying Plaintiffs allege that she was injured as a result of negligence on the part of both Plaintiffs and Liberty Service Sweeping, LLC. *Id.*

20.     In that regard, Underlying Plaintiffs allege that they were injured and/or damaged as a result of allegations that were the responsibility of Liberty Service, SELECTIVE's named insured, pursuant to the Agreement to properly inspect, and/or repair, an allegedly dangerous condition. *See* Exhibit A, Count I, ¶ 2-3.

## THE AGREEMENT

21.     The Agreement imposed requirements on Liberty Service Sweeping to not only indemnify and provide insurance to Plaintiffs, as summarized above, but as relates to the allegations of the Underlying Complaint, required Liberty Service Sweeping LLC to observe and report any hazardous condition at the property and participate in Woodbridge Center's risk management program. *See* Exhibit "B".

22.     Additionally, one of the documents included in the contract documents that formed the Agreement was a Certificate of Insurance in which Liberty Service Sweeping LLC agreed that Plaintiffs were additional insureds on a primary and non-contributory basis. *Please see* Certificate of Insurance included within Exhibit "B".

## THE SELECTIVE POLICY

23.     Based upon information and belief, SELECTIVE issued Policy No. S 2315313 to Liberty Service Sweeping, LLC, for the Policy Period of 6/20/19 to 6/20/20.   A certified and

complete copy of the SELECTIVE Policy is not available to Plaintiffs at this time, and Plaintiffs reserve the right to seek leave to amend this complaint to include the SELECTIVE Policy once it is obtained through discovery. However, upon information and belief, Plaintiffs were and are covered as additional insureds, if not direct insureds, as well as indemnitees, on the SELECTIVE Policy for the Underlying Lawsuit.

<u>**PLAINTIFF'S TENDERS AND DEFENDANTS' RESPONSES**</u>

24. Plaintiffs initially tendered the claim to SELECTIVE and Liberty Service Sweeping pre-suit, which tender was not accepted.

25. Once suit was filed, SELECTIVE continued to deny the tenders by Plaintiffs, including those outlined above.

26. Additionally, Plaintiffs tendered on behalf of an additional underlying defendant, Boscov's Department Store, LLC, which tender was also denied by SELECTIVE.

27. On January 27, 2021, SELECTIVE wrote and advised Plaintiffs of its position that no additional insured coverage was afforded to Plaintiffs and Boscov's, pursuant to an additional insured provision that it quoted as follows in its denial letter:

**Blanket Additional Insureds - As Required By Contract**

**A.** Subject to the **Primary and Non-Contributory** provision set forth in this endorsement, **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:
**1.** Your ongoing operations, "your product", or premises owned or used by you;

**Primary and Non-Contributory Provision**

The following is added to Paragraph **4. Other Insurance, b. Excess Insurance** under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

This insurance shall be excess with respect to any person or organization included as an additional insured under this policy, any other insurance that person or organization has shall be primary with respect to this insurance, unless:

**(1)** The additional insured is a Named Insured under such other insurance;

**(2)** You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or non-contributory basis; and

**(3)** The written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

*Please see* copy of SELECTIVE's January 27, 2021, denial letter attached hereto as Exhibit "D".

28.      In that letter, SELECTIVE's stated basis for denying Plaintiffs' tender was arguing that the Agreement did not require that the additional insured status be primary and non-contributory. *Id.* However, the reality is that the Agreement did require the same. *See* Exhibit "B".

29.      Then, on April 14, 2021, SELECTIVE wrote a new denial letter, changing the basis for the denial of the tender but maintaining its refusal to accept its duty to defend and indemnify Plaintiffs and Boscov's in connection with the Underlying Lawsuit. *Please see* copy of SELECTIVE's April 14, 2021, denial letter attached hereto as Exhibit "E".

30.      Plaintiffs continued to follow up with reiterated tenders, which SELECTIVE failed to accept.

31.      Specifically, after the summary judgment order attached hereto as Exhibit "C" was entered on July 22, 2022, additional tenders to SELECTIVE were sent on August 2, 2022; August 12, 2022; August 16, 2022; August 26, 2022; October 10, 2022; and March 15, 2023; which were essentially ignored by SELECTIVE.

32.      Thereafter, Plaintiffs were forced to hire coverage counsel given SELECTIVE's refusal to acknowledge its coverage obligations and properly respond to the tender, and on June 9, 2023, coverage counsel for Plaintiffs sent another tender follow-up letter to SELECTIVE,

discussing the various issues and rebutting SELECTIVE's coverage arguments, asking about coverage under the contractual liability and Supplementary Payment Provision sections of the SELECTIVE Policy, and requesting an immediate reversal of SELECTIVE's position. *Please see* copy of June 9, 2023, tender communication attached hereto as Exhibit "F".

33.     Ultimately, SELECTIVE responded with nothing but a two-sentence denial that simply referred back to their earlier communications. *Please see* copy of July 6, 2023, response from SELECTIVE at Exhibit "G".

34.     SELECTIVE failed to address the additional arguments and rebuttals to their coverage defenses, discussion and requests for SELECTIVE's position on additional sources of coverage. *Id.*

35.     SELECTIVE has continuously ignored and failed to acknowledge the additional insured coverage afforded to Plaintiffs and Boscov's in connection with the Underlying Lawsuit, and refused to fulfill its duty to defend and its duty to indemnify those parties.

36.     Most recently, in May of 2023, defense counsel for SELECTIVE's insured, Liberty Service Sweeping, did communicate a potential offer by SELECTIVE to pay certain defense costs in the future, but SELECTIVE has never communicated such a proposal to Plaintiffs directly, and it is apparent that said offer was an incomplete proposal in light of the underlying summary judgment order, and not an acknowledgement of SELECTIVE's coverage obligations to Plaintiff's and Boscov's.

## <u>COUNT I</u>

37.     The allegations made in paragraphs 1-36 above are hereby incorporated as paragraph 37 of Count I as though fully set forth herein.

FILED DATE: 7/27/2023 4:21 PM    2023CH06917

38.     Plaintiffs and Boscov's each qualify as additional insureds under the SELECTIVE Policy based upon the Agreement, in which SELECTIVE's named insured agreed to name Plaintiffs and Boscov's as additional insureds on its Policy. *See* Exhibit "B".

39.     Plaintiffs and Boscov's are owed a duty to defend by SELECTIVE in light of the fact that each of those parties qualifies an additional insured on the SELECTIVE Policy, and Plaintiffs and Boscov's are being sued for "bodily injury" that is alleged to have been caused in whole or in part by SELECTIVE's named insured's ongoing operations for Plaintiffs at the Property.

40.     The allegations of negligence asserted against Plaintiffs and Boscov's in the Underlying Complaint and Underlying Lawsuit involve allegations of failure to act or omissions within the scope of the ongoing operations that SELECTIVE's named insured was providing at the Woodbridge property, for which SELECTIVE's named insured was obligated to and did agree to provide pursuant to the Agreement, including but not necessarily limited to those specifically described herein. *See* Exhibit "B".

41.     In addition to the allegations of the Underlying Complaint, the discovery conducted during the course of litigating the Underlying Lawsuit has provided facts to SELECTIVE that are true, if unpled, and supplement and clarify and add to the allegations already pled against SELECTIVE's named insured by the underlying plaintiff in the Underlying Lawsuit that Plaintiff's alleged injury was caused in whole or in part by SELECTIVE's named insured's ongoing operations at the Property.

42.     Additionally, and in the alternative, upon information and belief, Plaintiffs and Boscov's qualify as indemnitees entitled to coverage under the Supplementary Payments Provision of the SELECTIVE Policy.

43.     In the Agreement, Liberty Service Sweeping LLC agreed to defend and indemnify Plaintiffs and Boscov's with respect to claims such as those pled against Plaintiffs and Boscov's in the Underlying Lawsuit.  *See* Exhibit "B" and Exhibit "C" (MSJ Order confirming that Plaintiffs and Boscov's are owed contractual defense for the Underlying Lawsuit pursuant to the Agreement).

44.     The Agreement, based upon information and belief, qualifies as an "insured contract" under the SELECTIVE Policy.  *Id.*

45.     Additionally, upon information and belief, SELECTIVE is providing a defense to Liberty Service Sweeping LLC in connection with the Underlying Lawsuit, and Plaintiffs and Boscov's are also named as defendants in that suit.

46.     To the extent that any conditions of the Supplementary Payments Provision may potentially have applied to this matter, SELECTIVE has had actual notice of the pending suit for years, and had or should have had notice that the claims against Plaintiffs and Boscov's fell or potentially fell within the coverage that its Policy affords to Plaintiffs and to Boscov's.

47.     SELECTIVE, directly or through its agents, employees, representatives, third-party administrator(s) and/or attorneys, knew or should have known from the outset of the Underlying Lawsuit that there was a suit pending against its additional insureds, the Plaintiffs herein and Boscov's, and that the allegations of the Underlying Lawsuit were within or potentially within the coverage of the SELECTIVE Policy.

48.     SELECTIVE has failed to provide a defense to Plaintiffs and Boscov's in the Underlying Lawsuit, and thus breached its duty to defend.

49.     As a result, to the extent that SELECTIVE may argue that any coverage defenses exist as to their obligation to fully defend and indemnify Plaintiffs and Boscov's in connection

with the Underlying Lawsuit, which is denied and will continue to be denied, then SELECTIVE has waived those defenses and is estopped from asserting any such coverage defenses as a result of its breach of its duty to defend.

50. In addition to a duty to defend Plaintiff, SELECTIVE owes a duty to indemnify Plaintiff with regard to any settlement or judgment that may be entered into in connection with the Underlying Lawsuit, or entered against Plaintiff in the same.

51. Additionally, in the Underlying Lawsuit, Plaintiffs have asserted claims against SELECTIVE's named insured, Liberty Service Sweeping LLC, for defense and indemnity pursuant to the Agreement. With regard to the contractual defense claim, Plaintiffs and Boscov's have already obtained summary judgment that Liberty Service Sweeping, LLC, does owe a contractual duty to defend them in connection with the Underlying Lawsuit. *See* Exhibit "C". SELECTIVE owes coverage and a duty to indemnify and reimburse all defense costs for Plaintiffs and Boscov's, as well as any settlement, judgment or award regarding said claims.

52. The claims asserted against Liberty Service Sweeping LLC in Plaintiffs' underlying claims allege damages because of "bodily injury" or "property damage" and are not precluded by any SELECTIVE Policy Contractual Liability exclusion because the Agreement is an "insured contract" and falls within the exception to any standard contractual liability exclusion.

53. In the alternative, to the extent that SELECTIVE's Policy may contain any exclusions that SELECTIVE contends applies to any claims, SELECTIVE's breach of its duty to defend Plaintiffs and Boscov's constitutes waiver and supports estoppel as to the same.

WHEREFORE, Plaintiffs, BROOKFIELD PROPERTIES RETAIL INC., BROOKFIELD PROPERTIES R LLC, WOODBRIDGE CENTER PROPERTY LLC, and

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

WOODBRIDGE CENTER, LLC, pray that this Court enter judgment in its favor and against Defendants on Count I, and providing the following relief:

a. Declaring and adjudicating the rights of the parties under the subject insurance Policy issued by SELECTIVE;

b. Declaring that Plaintiffs and Boscov's Department Store, LLC, qualify as additional insureds under SELECTIVE Policy No. S 2315313, and that SELECTIVE owes Plaintiff a duty to defend and to indemnify with respect to the claims made by the Underlying Plaintiffs, including those claims made in the Underlying Lawsuit filed as Case No. MID-L-7222-20 in the Superior Court of New Jersey, Law Division, Middlesex County;

c. Declaring that SELECTIVE owes a duty to defend and indemnify Plaintiffs and Boscov's Department Store, LLC, under the Supplementary Payments Provision of SELECTIVE Policy No. S 2315313, and that SELECTIVE owes Plaintiff a duty to defend and to indemnify with respect to the claims made by the Underlying Plaintiffs, including those claims made in the Underlying Lawsuit filed as Case No. MID-L-7222-20 in the Superior Court of New Jersey, Law Division, Middlesex County;

d. Declaring that SELECTIVE has breached its duty to defend and duty to indemnify Plaintiffs and Boscov's Department Store, LLC, with respect to the claims made in the Underlying Lawsuit filed as Case No. MID-L-7222-20 in the Superior Court of New Jersey, Law Division, Middlesex County;

e. Declaring that as a result of SELECTIVE's breach of the duty to defend and/or duty to indemnify, SELECTIVE has waived and/or is estopped from asserting any coverage defenses with respect to the Underlying Plaintiffs and with respect to the claims made by the Underlying Plaintiffs, including those claims made in the Underlying Lawsuit filed as Case No. MID-L-7222-20 in the Superior Court of New Jersey, Law Division, Middlesex County;

f. Declaring that to the extent that the Plaintiff has prevailed and in the future prevails in the Underlying claims against Liberty Service Sweeping, LLC, in the Undelrying Lawsuit, that any settlement, award, judgment, or damages entered in Plaintiffs' and/or Boscov's favor and against Liberty Service Sweeping, LLC, are covered by SELECTIVE Policy No. S 2315313, and SELECTIVE owes a duty to indemnify any such award entered in the Plaintiffs' and/or Boscov's favor and against Liberty Service Sweeping, LLC, with respect to the claims made by Underlying Plaintiffs, including those claims made in the Underlying Lawsuit filed as Case No. MID-L-7222-20 in the Superior Court of New Jersey, Law Division, Middlesex County;

g. Any other relief which this Court deems just and necessary.

Respectfully submitted,
**BROOKFIELD PROPERTIES RETAIL INC.,**
**BROOKFIELD PROPERTIES R LLC,**
**WOODBRIDGE CENTER PROPERTY LLC,**
**and WOODBRIDGE CENTER, LLC**

By: _____
One of its attorneys

Thomas J. Costello, III #6282694
**Best, Vanderlaan & Harrington**
25 E. Washington St., Suite 800
Chicago, IL  60602
(630) 752-8000
(630) 752-8763 (Fax)
Firm No. 37240

E-Service accepted only at eservice@bestfirm.com

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

Attorney ID #031032002
PALMISANO & GOODMAN, P.A.
171 Main Street
P.O. Box 518
Woodbridge, New Jersey 07095-0518
(732) 634-6464
Attorneys for Plaintiffs

|  |  |
|---|---|
| ELAINE HNYDA AND THOMAS HNYDA, Her Husband, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION:MIDDLESEX COUNTY DOCKET NO.  MID-L-7222-20 |
| *Plaintiff(s),* <br> vs. | CIVIL ACTION |
| BROOKFIELD PROPERTIES RETAIL INC. and/or BROOKFIELD PROPERTIES R LLC and/or WOODBRIDGE CENTER PROPERTY, LLC; and/or WOODBRIDGE CENTER, LLC and/or "ABC CORPS 1-10" (names being fictitious as true identities are unknown); and/or BOSCOV'S DEPARTMENT STORE, LLC and/or "DEF CORPS 1-10" (names being fictitious as true identities are unknown) and/or "JOHN DOES 1-10" (names being fictitious as true identities are unknown) and/or "GHI CORPS 1-10" (names being fictitious as true identities are unknown), UNIVERSAL PROTECTION SERVICE, LLC; LIBERTY SERVICE SWEEPING, LLC | *FIRST AMENDED COMPLAINT* |
| *Defendant(s).* | |

Plaintiffs, Elaine Hnyda and Thomas Hnyda, residing at 988 Main Street, Fords, in the

Township of Woodbridge, County of Middlesex and State of New Jersey, complaining against

defendants herein say:

### *FIRST COUNT*

1.    On or about October 18, 2019, plaintiff, Elaine Hnyda, was a lawful business

invitee on the premises of the defendants, Brookfield Properties Retail Inc. and/or Brookfield



Page 1 of 6

Properties R, LLC and/or Woodbridge Center Property, LLC; and/or Woodbridge Center, LLC and/or "ABC Corps 1-10" (names being fictitious as true identities are unknown); which premises are specifically located at 441 Woodbridge Center Drive, also known as Block 280, Lot 16, in the Township of Woodbridge, County of Middlesex and State of New Jersey when she was caused to trip and fall on broken rubber on ramp.

2.     At all times relevant herein, defendants, Brookfield Properties Retail Inc. and/or Brookfield Properties R, LLC and/or Woodbridge Center Property, LLC; and/or Woodbridge Center, LLC and/or Universal Protection Service, LLC and/or Liberty Service Sweeping Company, LLC and/or "ABC Corps 1-10" (names being fictitious as true identities are unknown) owned and/or occupied and/or operated and/or maintained and/or controlled and/or supervised and/or repaired and/or inspected, jointly, severally or individually, the property commonly known as 441 Woodbridge Center Drive, also known as Block 280, Lot 16, in the Township of Woodbridge, County of Middlesex and State of New Jersey.

3.     At the time and place aforesaid, the defendants, Brookfield Properties Retail Inc. and/or Brookfield Properties R, LLC and/or Woodbridge Center Property, LLC; and/or Woodbridge Center, LLC and/or Universal Protection Service, LLC and/or Liberty Service Sweeping Company, LLC and/or "ABC Corps 1-10" (names being fictitious as true identities are unknown) so negligently and carelessly owned and/or occupied and/or operated and/or maintained and/or supervised and/or controlled and/or repaired and/or inspected the subject premises so as to permit a dangerous condition to exist thereon causing the plaintiff to fall and sustain severe personal injuries and other diverse damages.

4.     As a direct and proximate result of the negligence of the defendants, Brookfield Properties Retail Inc. and/or Brookfield Properties R, LLC and/or Woodbridge Center Property, LLC; and/or Woodbridge Center, LLC and/or Universal Protection Service, LLC and/or Liberty

FILED DATE: 7/27/2023 4:21 PM  2023CH06917

Service Sweeping Company, LLC and/or "ABC Corps 1-10" (names being fictitious as true identities are unknown) as aforesaid, plaintiff, Elaine Hnyda, was caused to be injured due to the aforesaid dangerous condition and was caused to suffer serious personal and permanent injuries, she has been caused to endure pain and suffering which will continue in the future; she has been caused to incur medical expenses which will continue in the future; and she has been caused to lose enjoyment of the activities she usually engages in.

*WHEREFORE*, plaintiff, Elaine Hnyda, demands judgment against defendants, Brookfield Properties Retail Inc. and/or Brookfield Properties R, LLC and/or Woodbridge Center Property, LLC; and/or Woodbridge Center, LLC and/or Universal Protection Service, LLC and/or Liberty Service Sweeping Company, LLC and/or "ABC Corps 1-10" (names being fictitious as true identities are unknown) jointly, severally or in the alternative for damages and costs of suit and other relief the Court deems appropriate.

### *SECOND COUNT*

1.      Plaintiff, Elaine Hnyda, repeats each and every allegation of the First Count as if the same were set forth herein at length.

2.      At all times relevant, plaintiff, Elaine Hnyda, was a lawful business invitee at defendant, Boscov's Department Store LLC and/or "DEF Corps 1-10" (names being fictitious as true identities are unknown), tenant of defendants, Brookfield Properties Retail Inc. and/or Brookfield Properties R, LLC and/or Woodbridge Center Property, LLC; and/or Woodbridge Center, LLC and/or "ABC Corps 1-10" (names being fictitious as true identities are unknown)

3.      Defendant, Boscov's Department Store, LLC and/or "DEF Corps 1-10" (names being fictitious as true identities are unknown) occupied and/or operated and/or maintained and/or controlled and/or supervised and/or repaired and/or inspected, property commonly known as 441 Woodbridge Center Drive, also known as Block 280, Lot 16, in the Township of

Woodbridge, County of Middlesex and State of New Jersey.

4.      At the time and place aforesaid, the defendant, Boscov's Department Store, LLC and/or "DEF Corps 1-10" (names being fictitious as true identities are unknown) so negligently and carelessly failed to properly maintain and/or supervise and/or control and/or repair and/or inspect the subject premises so as to cause a dangerous condition to exist thereon causing the plaintiff to fall and sustain severe personal injuries and other diverse damages.

5.      As a direct and proximate result of the negligence of the defendant, Boscov's Department Store, LLC and/or "DEF Corps 1-10" (names being fictitious as true identities are unknown), as aforesaid, plaintiff, was caused to be injured due to the aforesaid dangerous condition and was caused to suffer serious personal and permanent injuries, she has been caused to endure pain and suffering which will continue in the future; she has been caused to incur medical expenses which will continue in the future; and she has been caused to lose enjoyment of the activities she usually engages in.

*WHEREFORE,* plaintiff, Elaine Hnyda, demands judgment against defendant, Boscov's Department Store, LLC and/or "DEF Corps 1-10" (names being fictitious as true identities are unknown) jointly, severally or in the alternative for damages and costs of suit and other relief the Court deems appropriate.

### *THIRD COUNT*

1.      Plaintiff, Elaine Hnyda, repeats each and every allegation of the First and Second Counts as if the same were set forth herein at length.

2.      Defendants, Universal Protection Service, LLC and/or Liberty Service Sweeping Company, LLC and/or "John Does 1-10" (names being fictitious, as true identities are unknown) and/or "GHI Corps 1-10" (names being fictitious, as true identities are unknown), jointly, severally or individually, are individuals and/or companies hired to supervise, maintain, control,

repair and/or inspect the subject premises.

3.     At the time and place aforesaid, defendants, Universal Protection Service, LLC and/or Liberty Service Sweeping Company, LLC and/or "John Does 1-10" (names being fictitious, as true identities are unknown) and/or "GHI Corps 1-10" (names being fictitious, as true identities are unknown) so negligently and carelessly supervised, maintained, controlled, repaired and/or inspected the subject premises so as to cause a dangerous condition to exist thereon causing the plaintiff to fall and sustain severe personal injuries and other diverse damages.

*WHEREFORE*, plaintiff demands judgment against defendants, Universal Protection Service, LLC and/or Liberty Service Sweeping Company, LLC and/or "John Does 1-10" (names being fictitious, as true identities are unknown) and/or "GHI Corps 1-10" (names being fictitious, as true identities are unknown) jointly, severally or in the alternative for damages and costs of suit and other relief the Court deems appropriate.

### *FOURTH COUNT*

1.     Plaintiff, Thomas Hnyda, repeats the allegations contained in the First, Second and Third Counts as if the same were more fully set forth herein and made a part hereof.

2.     Plaintiff, Thomas Hnyda, is the husband of plaintiff, Elaine Hnyda, and as such was caused to expend large sums of money in an effort to cure and alleviate his wife of her injuries and further suffered a loss of her services, all of which resulted from the aforesaid negligence of the defendants.

*WHEREFORE*, plaintiff, Thomas Hnyda, demands judgment against defendants, jointly, severally or in the alternative for damages, costs of suit and other relief the Court deems appropriate.

### *DEMAND FOR MEDICAL EXPENSE BENEFITS*

**Page 5 of 6**

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

Plaintiffs hereby demand the payment of any medical expense benefits afforded under any policy of insurance providing coverage to the defendants on the date of this accident.

### *JURY DEMAND*

Plaintiffs demand a trial by jury as to all issues.

### *CERTIFICATION PER R. 4:5-1*

I hereby certify, R. 1:4-4(b) that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and none are contemplated.

I further certify that this pleading contains no personal confidential identifiers.  I understand it is my responsibility to ensure there will be no personal confidential identifiers in any subsequent pleadings filed.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

### *DESIGNATION OF TRIAL COUNSEL PURSUANT TO RULE 4:25-4*

Maureen L. Goodman, Esq., *(Attorney ID* #031032002*)* of the firm of Palmisano & Goodman, P.A., attorneys for the aforementioned plaintiffs is hereby designated as trial counsel in the within matter.

PALMISANO & GOODMAN, P.A.
Attorneys for Plaintiffs

BY: _____
MAUREEN L. GOODMAN, ESQ.

DATED:  June 28, 2021

**Page 6 of 6**

FILED DATE: 7/27/2023 4:21 PM    2023CH06917

## PARKING LOT SWEEPING & MAINTENANCE AGREEMENT

This Parking Lot Sweeping & Maintenance Agreement ("**Agreement**") is made as of 12/21/2017 by and between Woodbridge Center Property LLC ("**Owner**") and Liberty Service Sweeping Company ("**Service Provider**").

**A.** Owner owns the property commonly known as Woodbridge Center ("**Property**"), located at 250 Woodbridge Center Dr, Woodbridge NJ 07095.

**B.** Owner desires to engage Service Provider to perform certain parking lot maintenance services ("**Services**") for the Property, and Service Provider desires to perform such Services, all as further provided below and in **Exhibit A**.

**NOW THEREFORE**, in consideration of the mutual agreements contained herein, the parties hereto agree as follows:

**1.    AGREEMENT TERM.**   The term of this Agreement shall begin on 1/1/2018 ("**Commencement Date**") and end on 12/31/2020 ("**Expiration Date**").  If this Agreement has not otherwise been terminated by the then scheduled Expiration Date, this Agreement shall be automatically extended on a month-to-month basis until either party terminates by giving the other party at least thirty (30) days written notice.

**2.    PAYMENT AMOUNTS.**   Owner shall pay the payment amounts to Service Provider as set forth on **Exhibit A**, payable within thirty (30) days of receipt of Service Provider's invoice, with any partial periods pro rated, and with all taxes included in such amounts.  Owner's payments for the Services in this Agreement are all-inclusive; Service Provider shall not be entitled to any reimbursement of costs and expenses.

**3.    PERFORMANCE OF SERVICES.**   Service Provider shall provide the Services in accordance with **Exhibit A** and **Exhibit C**, if attached, all to the satisfaction of Owner and in strict accordance with this Agreement.   Service Provider agrees to: (i) perform the Services in a professional workmanlike manner, (ii) dedicate a sufficient number of qualified employees, including supervisory personnel to perform the Services, (iii) maintain good order among its employees performing the Services and remove any employee if Owner requests, (iv) comply with all rules, requirements and programs of the Owner concerning the Services, including any limitations on hours of operations, (v) be completely responsible for all safety precautions and requirements relative to the Services, (vi) coordinate and cooperate with other contractors who are performing services and work at the Property, (vii) perform dangerous or disruptive Services only as scheduled with Owner's consent, which will usually be before or after the hours when the Property is open, (viii) provide all materials, equipment, machinery and tools necessary to perform the Services, (ix) comply with Owners clean-up requirements relating to the Services, and (x) perform the Services in accordance with applicable manufacturers' instructions, specifications, and warranties.

**4.    SERVICE PROVIDER COVENANTS.**

**A.    Employees.**   Service Provider shall be considered the sole employer of all employees providing the Services and shall have sole: (i) responsibility for their hiring, supervision, safety, health, compensation, benefits, taxes and other withholding requirements, promotion, discipline, discharge, and all other employer-employee matters, and (ii) liability for all claims arising from such matters.

B.   **Other Service Provider Parties.**  Without Owner's express written approval, Service Provider shall not engage any party to perform the Services other than Service Provider's own employees.

C.   **Insurance.**  Service Provider shall provide the insurance coverage set forth on **Exhibit B** attached hereto and deliver to Owner a certificate of insurance described therein prior to commencement of the Services.

D.   **Permits and Taxes.**  Service Provider shall (i) procure and keep in full force and effect, licenses, permits, bonds or other authorizations necessary to provide the Services, and (ii) unless expressly provided otherwise in **Exhibit A**, pay all sales, use, service, gross receipts, and other excises and taxes on or respecting the Services, any materials included therein, or otherwise relating to this Agreement.

E.   **Compliance With Laws.**  Service Provider agrees to perform the Services and all of its obligations under this Agreement in compliance with all applicable federal, state and local laws, statutes, ordinances, rules, regulations, codes and other governmental requirements ("**Laws**").

F.   **No Use of Property Name or Picture.**  Service Provider shall not, while this Agreement is in effect or thereafter, use or permit the use of Owner's name or the name of any affiliate of Owner, or the name, address or any picture or likeness of or reference to the Property, without the written consent of Owner.

5.   **SERVICE PROVIDER REPRESENTATIONS.**  Service Provider and all persons signing for Service Provider below hereby represent and warrant that: (i) this Agreement has been fully authorized, no further approvals are required, and Service Provider is legally authorized to do business in the State in which the Property is located, and (ii) this Agreement is binding on and enforceable against Service Provider in accordance with its terms.

6.   **INDEMNIFICATION.**

A.   Service Provider shall, to the fullest extent permitted by law, indemnify, hold harmless, defend and reimburse Owner, the property management company for the Property (if any), and all of their direct and indirect parents and subsidiaries, any of their affiliated entities, successors and assigns and any current or future director, officer, employee, partner, member, lender or tenant of any of them ("**Indemnified Parties**") from and against any and all claims, damages, losses, liabilities, suits, expenses, citations and fines (including attorneys' fees and legal expenses) (collectively, "**Claims**") which arise out of or are in any way connected with: (i) the Services performed under this Agreement, (ii) any negligence or intentional misconduct or other action or omission of Service Provider or its employees, agents, affiliates or suppliers, directly or indirectly involved in the Services ("**Service Provider-Parties**"), or (iii) any violation of this Agreement by Service Provider Parties.

B.   **Without limiting the generality of the foregoing provisions, Service Provider's obligations to indemnify, hold harmless, defend and reimburse under this Section include any and all Claims arising or alleged to arise wholly or partly out of or in any way connected with the Services, regardless of whether or not such Claims are caused or alleged to have been caused in whole or in part by any negligent act or omission of any Indemnified Party; provided, however, to the extent prohibited by applicable law, Service Provider's indemnification and hold harmless**

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

obligations herein shall not apply to any such Claim to the extent determined to be actually caused by the negligence of the party seeking to be indemnified.

**C.**      Service Provider's liability under this Agreement shall not be limited to the insurance coverage required to be carried by Service Provider.   The indemnification obligation under this Section shall not be limited by any limitation on the amount or type of damages, compensation or benefits payable by or for Service Provider or a subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

**D.**      Owner may set off against any payments under this Agreement any amounts which Owner determines in good faith are reasonably necessary to protect the Indemnified Parties from any Claims which are made under this **Section**.   This Section shall survive the expiration or earlier termination of this Agreement.

7.      **TERMINATION**

**A.      Termination for Cause.** Owner shall have the right to terminate this Agreement, by giving Service Provider at least five (5) days written notice, if Owner determines that Service Provider has failed to perform any provision of this Agreement.   Whether Service Provider cures such performance, during such five (5) day period, shall be determined by Owner in Owner's sole discretion.

**B.      Termination Without Cause.** Notwithstanding anything to the contrary contained in this Agreement, Owner may terminate this Agreement at any time, without cause, by giving Service Provider at least thirty (30) days' written notice.   Alternatively, Owner may elect in writing to discontinue the Services immediately, in which case, Owner shall pay any amount required under this Agreement for the thirty (30) day period following the date of such notice.

**C.      Actions Upon Termination.** Upon termination, Service Provider shall: (i) prorate Owner's payments pursuant to **Section**; (ii) do all other things reasonably necessary to cause an orderly cessation, or at Owner's option, transition of the Services to Owner or another service provider designated by Owner, without detriment to the continued operation of the Property, and (iii) turn over to Owner all reports, data, service manuals, records, and other materials respecting the Services.   Termination of this Agreement shall not affect Owner's right to recover damages for violations of this Agreement or any other rights or remedies of Owner under this Agreement or applicable Laws (all of which shall be cumulative).

**D.      Other Remedies.** If Service Provider fails to comply fully with any obligations promptly and properly in accordance with this Agreement: (i) Service Provider shall, to the extent required by Owner, re-perform such Services immediately and without additional charge, and (ii) if such failure continues for twenty-four (24) hours after Owner's written request (except that no request shall be required in an emergency), Owner may perform or arrange for another party to perform such obligations, deduct the cost from amounts owing Service Provider, and hold Service Provider liable for any additional costs incurred.

8.      **GENERAL PROVISIONS**

**A.      Entire Agreement.** This Agreement, which includes the exhibits referenced herein and attached hereto, sets forth the entire understanding and agreement of the

parties with respect to the Property and the subject matter of this Agreement and supersedes all prior agreements, representations, warranties, understandings and commitments of the parties, whether oral or written, with respect thereto (except for any Service Provider indemnities, warranties and other provisions of any prior agreements which survive termination of such other agreements).

**B.      Modifications and Amendments.**  No modification or amendment of any term or condition of this Agreement shall be valid or of any force or effect unless made in writing, signed by the parties hereto or their duly authorized representatives, and specifying with particularity the nature and extent of such modification or amendment.

**C.      Assignment.**  This Agreement may not be assigned, in whole or in part, by Service Provider without the prior written consent of Owner.  Owner may freely assign this Agreement to any affiliate or to any other assignee, provided that any such assignee (other than an affiliate) agrees in writing to fulfill all obligations of Owner under this Agreement.

**D.      Governing Law; Disputes.**  This Agreement shall be governed by, construed and enforced in accordance with the laws of the state in which the Property is located, without regard to choice of law or conflicts of laws provisions.  THE PARTIES HEREBY WAIVE TRIAL BY JURY.  If either party institutes any action or proceeding against the other relating to this Agreement or the Services, the prevailing party shall be entitled to recover all reasonable costs and attorneys' fees from the unsuccessful party.

**E.      Reformation and Severability.**  If any provision or term of this Agreement shall, to any extent, be held invalid, illegal or unenforceable by a court of competent jurisdiction, that provision shall, to the extent possible, be modified in such a manner as to be valid, legal and enforceable but so as to most nearly retain the intent of the parties as expressed herein, and if such a modification is not possible, that provision shall be severed from this Agreement, and in either case the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**F.      Waivers.**  No waiver of any term or condition of this Agreement shall be valid or of any force or effect unless made in writing, signed by the parties hereto or their duly authorized representatives, and specifying with particularity the nature and extent of such waiver.  The failure of a party at any time to exercise any of its rights or options under this Agreement shall not be construed to be a waiver of such rights or options or prevent such party from subsequently asserting or exercising such rights or options, nor shall it be construed, deemed or interpreted as a waiver of, or acquiescence in, any such breach or default or of any similar breach or default occurring later.

**G.      Independent Contractor.**  The parties are independent contractors with respect to one another and to this Agreement and shall not be construed to be the agent of the other under any circumstances.  Neither party shall make any express or implied agreements, warranties, guarantees or representations or incur any debt in the name of, or on behalf of, the other or be obligated by or have any liability under any agreement or representations made by the other that are not expressly authorized in writing.

**H.      Force Majeure Delays.**  Neither party shall be liable for any delay or failure to perform its obligations under this Agreement, if such delay or failure is caused by a force beyond such party's control, which forces shall include, but not be limited to, casualty damage, terrorism and bomb threats.

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

**I.      Counterparts.**  This Agreement may be executed in any number of counterparts and by the parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original and all of which, when taken together, shall constitute one and the same Agreement.  Delivery of an executed counterpart of this Agreement by electronic mail or facsimile shall be equally as effective as delivery of a manually executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement electronically or by facsimile shall also deliver a manually executed counterpart of this Agreement; provided, however, the failure to deliver a manually executed counterpart shall not affect the validity, enforceability and binding effect of this Agreement.

**J.      Inconsistency Within Agreement.**  Owner's policy prohibits attaching Service Provider's proposal or agreement form as an exhibit or other attachment to this Agreement.  If for any reason Service Provider's proposal or agreement form is so attached, the parties hereby mutually agree that: (i) such item was attached only as a convenience and to expedite the preparation of this Agreement; and (ii) only the portions of such attachment which describe the details, specifications, performance times, and pricing, for the Services shall be deemed to be incorporated into this Agreement, and only to the extent consistent with the other provisions of this Agreement.

**K.      Notices.** All notices, requests and approvals required under this Agreement must be in writing and addressed to the other party's designated contact(s) for notices as set forth below, or to such other address as such party designates in writing.  All such notices, requests and approvals will be deemed to have been delivered either when personally delivered, or upon delivery by either registered or certified mail, postage prepaid with return receipt requested, or by a recognized commercial courier service providing proof of delivery on the date of mailing. The provisions of this <u>Section</u> shall survive termination of this Agreement.  The parties' initial addresses for notices, requests and approvals as described herein are as follows:

**<u>To Owner</u>**:
Woodbridge Center
250 Woodbridge Center Drive
ATTN: Mall Management Office
Woodbridge , NJ 07095

Attn:  General Manager

*<u>With a copy to</u>:*
c/o GGP Inc.
110 N. Wacker Drive
Chicago, IL 60606
Attn:  Legal Department – Corporate Contracts and Securities

**<u>To Service Provider</u>**:
Liberty Service Sweeping Company
PO Box 1781
South Hackensack, NJ 07606
Attn: Frank Lombardo

**IN WITNESS WHEREOF,** the parties hereto have duly executed and delivered this Agreement as of the day and year first above written.

<u>OWNER:</u>
Woodbridge Center Property LLC.

BY: _____
    Authorized Signatory

<u>SERVICE PROVIDER:</u>

BY: _____
NAME: FRANK LOMBARDO
TITLE: MEMBER
TAXPAYER NUMBER (FEIN): 54-2082388

**EXHIBIT A**

**PARKING LOT SWEEPING AND MAINTENANCE**

1. **PAYMENT AMOUNT; PAYMENT SCHEDULE**

   Owner agrees to pay Service Provider the sum of $▋▋▋▋▋▋ payable as follows:

   | Date Due | Payment Amount |
   |---|---|
   | Monthly, 30 days after receipt of invoice | $▋▋▋▋▋▋ |
   | | |
   | | |

2. **SERVICES**

   Service Provider will be responsible for providing the following parking lot sweeping and maintenance Services for the parking and/or other exterior areas of the Property:

   A. Sweeper will provide 2 persons in the sweeper vehicle. One person to operate backpack blower and another to operate the sweep vehicle.

   B. Sweeping of the parking lot seven (7) days a week. Sweeping shall be completed at a time set by the Owner and shall in no way interfere with the normal routine of the mall tenants or the patrons.

   C. Daily Services includes the use of a mechanical sweeper (Power Sweep) in all areas of the parking lot, vehicle entrances, outer/inner ring roads, truck docks and parking structures. The sweeper truck is to include light bars on the cab for easy visibility. The light bars should be on during all operations on the Property. All routine maintenance of the equipment should be completed off site. Sweeper is to have a spare sweeper truck in case of primary truck breakdown.

   D. Recommended hours for sweeping are 1:00 am to 7:00 am Monday through Saturday and on Sunday between 4:00 am to 9:00 am. Service Provider will submit a schedule for sweeping to the Owner for coordination of parking lot lighting operation.

   E. Daily Services to be cleaned include all curb lines, wheel stops, sidewalks, stop signs, loading docks, landscape areas, corners, mall entrances and gutters will be swept or air blown to remove all trash, sand, garbage, gravel and debris.

   F. Daily Services to be hand-picked free of debris include all landscape areas, beds & grassy areas, island perimeters and remote areas including fence lines, guardrails, mulched beds.

   G. Change trash receptacle liners and clean tops of trash cans.

FILED DATE: 7/27/2023 4:21 PM    2023CH06917

H.  All debris is to be removed from site and disposed of in accordance to all applicable laws and regulations.

I.  Service Provider will designate a representative to make regular checks of the parking lot to ensure the efficiency of the sweeper and its operator.  These checks are to be completed at least once per week.

J.  All work shall be subject to inspection by the Owner or its agent.  If any part of the work fails to meet Owner's standards, Service Provider will return to the Property to correct it at no additional cost to Owner.

K.  Provide a monthly Property Service report that shows the dates and times of service, both scheduled and additional visits.

L.  Provide and maintain an emergency phone number to be used in emergency situations 24 hours per day, 365 days per year.  On-site emergency calls will be responded to within 2 hours.

M.  Service Provider shall require that its workers report any hazardous conditions they day noticed to onsite security by no later than 10 am. Sweeper will observe and participate in the Property's risk management program.

N.  If Services are not performed on a given day(s) due to weather conditions, Service Provider shall provide a per diem prorated credit on the next Invoice.

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

Site map
Tuesday, October 3, 2017   10:14 AM

Woodbridge site plan



Inside the yellow is to be included.
The areas in red are not to be included.

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

## EXHIBIT B

### INSURANCE REQUIREMENTS

**REQUIRED INSURANCE.**
Service Provider shall furnish and maintain in effect during the term of the Agreement the insurance coverage described below:

| | |
|---|---|
| **Commercial General Liability** | $2,000,000 Occurrence/$2,000,000 Aggregate |
| **Commercial Automobile Liability** | $2,000,000 Combined Single Limit |
| **Workers' Compensation Employers' Liability** | Statutory<br>$500,000 Each Accident<br>$500,000 Disease, Policy Limit<br>$500,000 Disease, Each Employee |

OR

| | |
|---|---|
| **(for Monopolistic States) Workers' Compensation Stop Gap Employers' Liability** | Evidence of Monopolistic State Coverage<br>$500,000 Occurrence/Aggregate |

**POLICY REQUIREMENTS.**
The insurance required of Service Provider shall be issued by an insurer or insurers lawfully authorized to do business in the jurisdiction in which the Property is located, and maintaining an AM Best rating of at least A- VII.

The Commercial General Liability Insurance required shall name, as "**Additional Insureds**", Owner (exactly as defined herein), GGPLP REIT Services, LLC, GGP Inc. and General Growth Services, Inc.

All Insurance policies shall contain waivers of any and all rights of subrogation against the Additional Insureds, and shall contain either a cross-liability endorsement or separation of insureds provision, which provision shall permit the limits of liability under Service Provider's policies to apply separately to each Additional Insured.

All Insurance policies required by this Agreement shall state that they are primary and not additional to, or contributing with, any other insurance carried by, or for the benefit of the Additional Insureds with respect to the negligence of Service Provider, its employees, agents, contractors and/or subcontractors.

Before the commencement of any Services, the Property shall be furnished valid and original certificate(s) of insurance evidencing that all required insurance coverages are in force. All insurance policies required by this Agreement shall bear an endorsement prohibiting such policy from being canceled, allowed to lapse or substantially modified without thirty (30) days prior written notice to Owner, except for non-payment of premium for which ten (10) days notice shall be provided.

Compliance with the Insurance requirements of this Agreement shall not be relieved by Owner's, or any Property's, receipt or review of any insurance certificates.

FILED DATE: 7/27/2023 4:21 PM  2023CH06917

 **ACORD®**

## CERTIFICATE OF LIABILITY INSURANCE

LIBER17   OP ID: DF

DATE (MM/DD/YYYY) 12/21/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Lori Peterson |
|---|---|
| THE BARCLAY GROUP<br>Hammonton Branch<br>110 Route 206, P.O. Box 943<br>Hammonton, NJ 08037<br>Frank N. Della Peruta | PHONE (A/C, No, Ext): 609-567-3344  FAX (A/C, No): 609-567-9977 |
| | E-MAIL ADDRESS: lpeterson@barclayinsurance.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED  The Liberty Service Sweeping Company LLC<br>310 Railroad Avenue<br>Hackensack, NJ 07606 | INSURER A : United States Fire Ins Co | |
| | INSURER B : Wesco Insurance Company | |
| | INSURER C : North River | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES   CERTIFICATE NUMBER:   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| C | X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS-MADE X OCCUR | X | X | 506-889576-9 | 08/20/2017 | 06/20/2018 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY X PRO-JECT X LOC<br>OTHER: | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| C | AUTOMOBILE LIABILITY<br>X ANY AUTO<br>X ALL OWNED AUTOS  ☐ SCHEDULED AUTOS<br>X HIRED AUTOS  ☐ NON-OWNED AUTOS | | | 506-889576-9 | 08/20/2017 | 06/20/2018 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | Comp/Coll | $ 1,000 |
| A | X UMBRELLA LIAB X OCCUR<br>☐ EXCESS LIAB  ☐ CLAIMS-MADE<br>☐ DED X RETENTION $ 0 | | | 523-806622-2 | 06/20/2017 | 06/20/2018 | EACH OCCURRENCE | $ 2,000,000 |
| | | | | | | | AGGREGATE | $ 2,000,000 |
| | | | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY       Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | WWC3313214 | 12/04/2017 | 12/04/2018 | X PER STATUTE   OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| C | Comprehensive | | | 506-889576-9 | 08/20/2017 | 06/20/2018 | Deductibl | 1,000 |
| C | Collision | | | 506-889576-9 | 08/20/2017 | 06/20/2018 | Deductibl | 1,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

## CERTIFICATE HOLDER   WOODBR1

| CANCELLATION |
|---|
| SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |

Woodbridge Center Property LLC
250 Woodbridge Center Drive
Woodbridge, NJ 07095

AUTHORIZED REPRESENTATIVE
Frank N. Della Peruta   *Frank Della Peruta*

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)   The ACORD name and logo are registered marks of ACORD

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

| NOTEPAD: | HOLDER CODE | WOODBR1 | LIBER17 | | PAGE 2 |
|---|---|---|---|---|---|
| | INSURED'S NAME | The Liberty Service Sweeping | OP ID: DF | Date | 12/21/2017 |

Woodbridge Center Property, LLC, GGPLP REIT Services, LLC, GGP Inc. and
General Growth Services, Inc. as additional insured on a primary and non
contributory basis.  Waiver of Subrogation Applies.

"All coverage's evidenced are subject to the insurance policies referenced
herein. A copy of the policy forms are available upon request"

NJ Law: 10 day notice of cancellation for non payment of premium
or 30 days Notice of cancellation for any other reason.

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

# Liberty Service Sweeping Company

*Total Parking Lot Maintenance*
PO BOX 1781 South Hackensack, New Jersey 07606
(201) 498-1119    Fax   (201) 498-9719



October 20, 2017

Mr. Jim Bereheiko
Senior Operations Manager
Woodbridge Center Property LLC
250 Woodbridge Center Drive
Woodbridge, New Jersey 07095

Dear Mr. Bereheiko;

Thank you, I appreciate you and Mr. Rubin taking the time to meet the other day to discuss the power sweeping proposal. I am grateful for the opportunity to bid on the parking lot sweeping and handpicking services. The enclosed package is a proposal of services that will maintain the high standards you've come to expect at Woodbridge Center.

Here are a few brief points about Liberty Service Sweeping Company

- ✓ ALL of our equipment is tracked and monitored thru GPS Tracking services.
- ✓ Supervisory personal are on site and on hand to inspect and insure quality service.
- ✓ Our fleet of sweepers is upgraded frequently to provide the best performance.
- ✓ Whisper quiet sweeping technology helps guard against noise ordinance issues.
- ✓ Our drivers are continuously trained and monitored.
- ✓ We are one of the largest sweeping only service providers and are hands-on controllers who can guarantee your satisfaction.
- ✓ Liberty Service is a family run operation who strives to perform to the best standards for every job we do.

As you know, I am available to meet with you at any time and I am proud that we offer the most immediate response to any issue.

Once again, thank you and I look forwards to our continued relationship

Sincerely,

Frank Lombardo
Liberty Service Sweeping Company

FILED DATE: 7/27/2023 4:21 PM  2023CH06917

## EXHIBIT A

### PARKING LOT SWEEPING AND MAINTENANCE

1.    **PAYMENT AMOUNT; PAYMENT SCHEDULE.**

Owner agrees to pay Service Provider the sum of $█████ payable as follows:

| Date Due | Payment Amount |
|---|---|
| Monthly, 30 days after receipt of invoice | ███████ |
|  |  |
|  |  |

2.    **SERVICES**

Service Provider will be responsible for providing the following parking lot sweeping and maintenance Services for the parking and/or other exterior areas of the Property:

A.  Sweeper will provide 2 persons in the sweeper vehicle. One person to operate backpack blower and another to operate the sweep vehicle.

B.  Sweeping of the parking lot seven (7) days a week.  Sweeping shall be completed at a time set by the Owner and shall in no way interfere with the normal routine of the mall tenants or the patrons.

C.  Daily Services includes the use of a mechanical sweeper (Power Sweep) in all areas of the parking lot, vehicle entrances, outer/inner ring roads, truck docks and parking structures.  The sweeper truck is to include light bars on the cab for easy visibility.  The light bars should be on during all operations on the Property.  All routine maintenance of the equipment should be completed off site. Sweeper is to have a spare sweeper truck in case of primary truck breakdown.

D.  Recommended hours for sweeping are 1:00 am to 7:00 am Monday through Saturday and on Sunday between 4:00 am to 9:00 am.  Service Provider will submit a schedule for sweeping to the Owner for coordination of parking lot lighting operation.

E.  Daily Services to be cleaned include all curb lines, wheel stops, sidewalks, stop signs, loading docks, landscape areas, corners, mall entrances and gutters will be swept or air blown to remove all trash, sand, garbage, gravel and debris.

F.  Daily Services to be hand-picked free of debris include all landscape areas, beds & grassy areas, island perimeters and remote areas including fence lines, guardrails, mulched beds.

G.  Change trash receptacle liners and clean tops of trash cans.

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

H. All debris is to be removed from site and disposed of in accordance to all applicable laws and regulations.

I. Service Provider will designate a representative to make regular checks of the parking lot to ensure the efficiency of the sweeper and its operator. These checks are to be completed at least once per week.

J. All work shall be subject to inspection by the Owner or its agent. If any part of the work fails to meet Owner's standards, Service Provider will return to the Property to correct it at no additional cost to Owner.

K. Provide a monthly Property Service report that shows the dates and times of service, both scheduled and additional visits.

L. Provide and maintain an emergency phone number to be used in emergency situations 24 hours per day, 365 days per year. On-site emergency calls will be responded to within 2 hours.

M. Service Provider shall require that its workers report any hazardous conditions they day noticed to onsite security by no later than 10 am. Sweeper will observe and participate in the Property's risk management program.

N. If Services are not performed on a given day(s) due to weather conditions, Service Provider shall provide a per diem prorated credit on the next invoice.

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

# F L SERVICES, LLC.

**PO BOX 424**
**BERKELEY HEIGHTS, NJ    07922**
**908-296-2328 phone**
**908-620-1083 fax**

*October 24, 2017*

## QUOTE # 102417-10 WOODBRIDGE

**PROVIDED TO:**      *Woodbridge Center Mall*
                     *250 Woodbridge Center Drive*
                     *Woodbridge, NJ*
**ATTN:**             *Jim Bereheiko*

**WORK LOCATION:**  *Woodbridge Center*

**SCOPE:**      Sweeping Services
**-supply sweeping services per bid documents dated 10/3/17**
**-includes all material and labor as defined**

**COST PER YEAR**                $▮▮▮▮▮▮▮

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

**C&L SERVICES** Since 1987
Sweeping Perennual Protection

(732) 886-1940
(732) 886-6401-fax
350 Faraday Avenue

Quote

| DATE | ESTIMATE # |
|------|-----------|
| 10/20/2017 | |

## NAME / ADDRESS

Woodbridge Center
250 Woodbridge Center Dr.
Woodbridge, NJ 07095
Attn: Jim Berchetko

**PROJECT**

Sweep & Porter Service

| QTY | DESCRIPTION | PRICE EACH |
|-----|-------------|-----------|
| | Enclosed is C&L General Services proposal for Sweeping & Porter services at Woodbridge Center as per our walk through. Scope of work as follows: | |
| | Sweeping service will consist of 2 person crew with blowers and Air Vac Sweeper truck blowing all light litter off the sidewalks and out of corners, followed by an Air Vac Sweeper to remove light litter from all accessible blacktop areas paying special attention to curb lines, exits, and entrances. The investment for this service will be ▮▮▮▮ per day, ▮▮▮▮ per week, ▮▮▮▮ per month, ▮▮▮▮ per year as per your request Initial:_____ | |
| | We also offer to Hand Pick debris along the grass area Islands and perimeter to remove light litter. The investment for this service will be ▮▮▮▮ per day, $▮▮▮▮ per week, $▮▮▮▮ per month, $▮▮▮▮ per year as per your request Initial:_____ | |
| | C&L Sweeper Services cannot be responsible for parked cars or items that might impede the sweeping process | |
| | Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate. No additional work will be performed without written consent. Any permits and/or inspection fees required by governmental agencies will be billed extra, at cost. | |
| | Please don't hesitate to call with any questions or concerns | |

Thank you for the
opportunity to bid this
service.

| | |
|---|---|
| Subtotal | $ |
| Sales Tax (6.875%) | $ |
| TOTAL | $ |

Hank Johns
Account Executive

APPROVAL SIGNATURE: —————————————

** *Please initial, sign, and return.

DICKIE, McCAMEY & CHILCOTE, PC
(A Pennsylvania Professional Corporation)
By: Jeffrey H. Quinn, Esquire
Attorney Identification No. 018301986
1650 Arch Street, Suite 2110
Philadelphia, PA 19103
(215) 925-1091

**FILED**

**JULY 22 , 2022**

**HON. BRUCE J. KAPLAN, J.S.C.**

Attorney for Defendants:
Woodbridge Center Property, LLC,
Woodbridge Center, LLC, Brookfield
Properties Retail Inc., Brookfield Properties
R, LLC, and Boscov's Department Store,
LLC

ELAINE HNYDA AND THOMAS HNYDA,

Plaintiffs,

vs.

BROOKFIELD PROPERTIES RETAIL INC.
and/or BROOKFIELD PROPERTIES R LLC
and/or WOODBRIDGE CENTER
PROPERTY, LLC and/or WOODBRIDGE
CENTER, LLC and/or "ABC CORPS 1-10"
(names being fictitious as true identities are
unknown); and/or BOSCOV'S
DEPARTMENT STORE, LLC and/or "DEF
CORPS 1-10" (names being fictitious as true
identities are unknown) and/or "JOHN DOES
1-10" (names being fictitious as true identities
are unknown) "GHI CORPS 1-10" (names
being fictitious as true identities are
unknown), UNIVERSAL PROTECTION
SERVICE, LLC; LIBERTY SERVICE
SWEEPING, LLC,

Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MIDDLESEX COUNTY

DOCKET NO.:  MID-L-7222-20

**ORDER**

**THIS MATTER** having been opened to the Court on application of Jeffrey H. Quinn,

Esquire, attorney for Defendants, Woodbridge Center Property, LLC, Woodbridge Center, LLC,

Brookfield Properties Retail Inc., Brookfield Properties R, LLC and Boscov's Department Store,

LLC, and the Court having read and considered the moving papers submitted in this matter,

considered the opposition, considered the arguments of counsel, and for good cause having been

shown, and for the reasons set forth on the record at oral argument July 22, 2022;

**EXHIBIT C**

MID-L-007222-20   07/22/2022   Pg 2 of 2   Trans ID: LCV20222711585

It is on this 22nd day of July, 2022,

**ORDERED** that Defendants Woodbridge Center Property, LLC, Woodbridge Center, LLC, Brookfield Properties Retail Inc., Brookfield Properties R, LLC and Boscov's Department Store, LLC's motion for summary judgment is **hereby GRANTED in part, and DENIED in part**;

**ORDERED** that summary judgment is hereby entered in favor that Defendants Woodbridge Center Property, LLC, Woodbridge Center, LLC, Brookfield Properties Retail Inc., Brookfield Properties R, LLC and Boscov's Department Store, LLC are hereby owed contractual defense from Defendant Liberty Service Sweeping LLC; and it is further

**ORDERED** that summary judgment ordering that Defendant Liberty Service Sweeping LLC owes a contractual duty to indemnify, hold harmless, and to reimburse to Defendants Woodbridge Center Property, LLC, Woodbridge Center, LLC, Brookfield Properties Retail Inc., Brookfield Properties R, LLC and Boscov's Department Store, LLC is hereby denied without prejudice; and it is further

**ORDERED** that summary judgment dismissing the crossclaim of Liberty Service Sweeping, LLC is hereby denied; and it is further

**ORDERED** that service of this Order shall be deemed effectuated upon all parties upon its upload to eCourts. Pursuant to <u>Rule</u> 1:5-1(a), movant shall serve a copy of this Order on all parties not served electronically within seven (7) days of the date of this order.

/S/ Bruce J. Kaplan
HONORABLE BRUCE J. KAPLAN, J.S.C.

OPPOSED
On this date, pursuant to <u>R</u>. 1:6-2
the Court's statement of reasons
has been set forth on the record.

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

Mirjana Holick
Selective Insurance Company of America
Mailing address for correspondence:
P.O. Box 7258
London, KY 40742
Phone#: 609-689-7668
Fax#: 877-352-6385
mirjana.holick@selective.com

# SELECTIVE

## BE UNIQUELY INSURED℠

January 27, 2021

TransGlobal Adjusting
5309 Transportation Blvd.
Cleveland, OH 44125

### **Tender Denial**

RE:     Caption of Lawsuit: Elaine Hnyda and Thomas Hnyda vs Brookfield Properties
Retail Inc., et al
          Claimant: Elaine Hnyda
          Our Claim Number: 22055118
          Your Client: Woodbridge Center Property
          Your Claim #:  959311-01
          Selective Policy Number: S  2315313
          Policy Period: 6/20/2019-6/20/2020
          Date of Loss:  10/18/2019

Dear Ms. Zawistowski,

I am a GL Litigation Specialist employed by Selective Insurance Company of America,
which is handling this claim on behalf of Liberty Service Sweeping's carrier, Selective
Insurance Company of New England (Selective).  I am responsible for handling this claim
and determining what coverage may be available under the terms of the insurance
policy that our insured purchased from Selective.

Selective has carefully reviewed your tender request, the complaint and the contract
between Woodbridge Center and Liberty Service Sweeping Company.

In addition to the information you have forwarded to me, if you should come into
possession of new or different information, please forward it to me so that I may give it
my full attention and reconsider our position.

We acknowledge that you are seeking contractual indemnification and that Selective
defends and indemnifies Woodbridge Center Property under the Selective policy
pursuant to the terms of the contract agreement with our insured, Liberty Service
Sweeping.   This matter stems from a lawsuit filed on behalf of Elaine Hnyda and


EXHIBIT
D

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

Thomas Hnyda in Superior Court of New Jersey, Law Division, Middlesex County.  Docket # MID-L-7222-20.  The Lawsuit alleges that plaintiff was injured as a result of a trip and fall accident on October 18,  2019 in the Woodbridge Center located at 441 Woodbridge Center Drive, Woodbridge NJ.

Selective is unable to accept the tender of this claim for additional insured status.  Liberty Service Sweeping's policy contains coverage form CG 7300 (01/19) entitled Elitepac General Liability Extension which contains a provision entitled Blanket Additional Insureds - As Required by Contract.  The applicable portion has been cited below:

> **Blanket Additional Insureds - As Required By Contract**
> **A.** Subject to the **Primary and Non-Contributory** provision set forth in this endorsement, **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:
> **1.** Your ongoing operations, "your product", or premises owned or used by you;
>
> **Primary and Non-Contributory Provision**
> The following is added to Paragraph **4. Other Insur-ance, b. Excess Insurance** under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**
> This insurance shall be excess with respect to any person or organization included as an additional insured under this policy, any other insurance that person or organization has shall be primary with respect to this insurance, unless:
> **(1)** The additional insured is a Named Insured under such other insurance;
> **(2)** You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or non-contributory basis; and
> **(3)** The written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

The contract does not specify that the additional insured status be primary and non-contributory which is a requirement of the coverage endorsement.

Therefore, the duty to provide contractual indemnification or primary additional insured coverage to Woodbridge Center Property has not been triggered.  Selective disclaims any duty to provide contractual indemnification.

Hopefully, this letter provides you with a clear explanation of Selective's position. However, if my explanation is unclear, or if you would like to discuss any aspect of this claim, I would be happy to discuss such matters with you. I can be reached at the phone number set forth above.

Sincerely,


Mirjana Holick
Litigation Specialist

GL Litigation Specialist


cc: NFP PROPERTY & CASUALTY SERVICES INC


Claims activities are conducted by employees of Selective Insurance Company of America, either on its own behalf or as the servicing carrier for the Selective insurer affiliate which issued the policy that corresponds to the claim referenced above.

FILED DATE: 7/27/2023 4:21 PM    2023CH06917

FILED DATE: 7/27/2023 4:21 PM    2023CH06917

**SELECTIVE**

BE UNIQUELY INSURED℠

Mirjana Holick
Selective Insurance Company of America
Mailing address for correspondence:
P.O. Box 7258
London, KY 40742
Phone#: 609-689-7668
Fax#: 877-352-6385
mirjana.holick@selective.com

April 14, 2021

TransGlobal Adjusting
5309 Transportation Blvd.
Cleveland, OH 44125

<u>**Tender Denial**</u>

RE:     Caption of Lawsuit: Elaine Hnyda and Thomas Hnyda vs Brookfield Properties
Retail Inc., et al
         Claimant: Elaine Hnyda
         Our Claim Number: 22055118
         Your Client: Woodbridge Center Property
         Your Claim #:  959311-01
         Selective Policy Number: S  2315313
         Policy Period: 6/20/2019-6/20/2020
         Date of Loss:  10/18/2019

Dear Ms. Zawistowski,

I am a GL Litigation Specialist employed by Selective Insurance Company of America,
which is handling this claim on behalf of Liberty Service Sweeping's carrier, Selective
Insurance Company of New England (Selective).  I am responsible for handling this claim
and determining what coverage may be available under the terms of the insurance
policy that our insured purchased from Selective.

Selective has carefully reviewed your recent tender request, the complaint and the
contract between Woodbridge Center and Liberty Service Sweeping Company.

In addition to the information you have forwarded to me, if you should come into
possession of new or different information, please forward it to me so that I may give it
my full attention and reconsider our position.

We acknowledge that you are seeking contractual indemnification and that Selective
defends and indemnifies Woodbridge Center Property under the Selective policy
pursuant to the terms of the contract agreement with our insured, Liberty Service
Sweeping.   This matter stems from a lawsuit filed on behalf of Elaine Hnyda and

**EXHIBIT**

**E**

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

Thomas Hnyda in Superior Court of New Jersey, Law Division, Middlesex County.  Docket # MID-L-7222-20.  The Lawsuit alleges that plaintiff was injured as a result of a trip and fall accident on October 18, 2019 in the Woodbridge Center located at 441 Woodbridge Center Drive, Woodbridge NJ.

Selective is unable to accept the tender of this claim for contractual indemnification as the contract language does not does not meet the requirements of Azurak v. Corporate Property Investors, 175 N.J. 110 (2003). For any party to be indemnified by another, the agreement must explicitly state that the party to be indemnified is not to be indemnified for their own negligence.

As far as additional insured status under the Selective policy, it does not appear as though the accident occurred in whole or in part as a result of the insured's ongoing operations which is a requirement for additional insured status per the wording of the blanket additional insured endorsement as outlined below.

Regarding the demand for additional insured status, Selective policy # S2315313 contains the ElitePac General Liability Extension Endorsement CG 7300 (01/19) endorsement which includes the following language:

**SECTION II – WHO IS AN INSURED**
**-Amendments**

**Blanket Additional Insureds - As Required By Contract**
**A.** Subject to the **Primary and Non-Contributory** provision set forth in this endorsement, **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:
**1.** Your ongoing operations, "your product", or premises owned or used by you;

**Primary and Non-Contributory Provision**
The following is added to Paragraph **4. Other Insur-ance, b. Excess Insurance** under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**
This insurance shall be excess with respect to any person or organization included as an additional insured under this policy, any other insurance that person or organization has shall be primary with respect to this insurance, unless:
**(1)** The additional insured is a Named Insured under such other insurance;
**(2)** You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or non-contributory basis; and

**(3)** The written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

The Selective policy and the contract in force contains the necessary primary and non-contributory language and your client Woodbridge Center Property would qualify as an additional insured under the policy but only with respect to any liability for "bodily injury" or "property damage" caused, in whole or in part, by our insured's ongoing operations. Based on the lack of sufficient information to confirm this matter occurred in whole or in part of our insured's ongoing operations at the time that this accident occurred, we respectfully reject any tender for additional insured status under the Selective policy at this time.

The duty to provide contractual indemnification or additional insured status to Woodbridge Center Property has not been triggered, therefore Selective disclaims any duty to defend and indemnify to Woodbridge Center Property.

Hopefully, this letter provides you with a clear explanation of Selective's position. However, if my explanation is unclear, or if you would like to discuss any aspect of this claim, I would be happy to discuss such matters with you. I can be reached at the phone number set forth above.

Sincerely,


Mirjana Holick
GL Litigation Specialist


cc: NFP PROPERTY & CASUALTY SERVICES INC

Claims activities are conducted by employees of Selective Insurance Company of America, either on its own behalf or as the servicing carrier for the Selective insurer affiliate which issued the policy that corresponds to the claim referenced above.

FILED DATE: 7/27/2023 4:21 PM    2023CH06917

# BEST, VANDERLAAN & HARRINGTON
*Attorneys at Law*

**BV&H**

**Thomas J. Costello, III**
tcostello@bestfirm.com

*Chicago Office*
25 E. Washington St.
Suite 800
Chicago, IL 60602
(312) 819-1100
(312) 819-8062 (Fax)

*DuPage County Office*
1755 Park Street
Suite 180
Naperville, IL 60563
(630) 752-8000
(630) 752-8763 (Fax)

*Will County Office*
1000 Essington Rd.
Joliet, IL 60435
(815) 740-1500
(815) 740-6304 (Fax)

*Rockford Office*
129 S. Phelps Ave.
Suite 800
Rockford, IL 61108
(815) 964-9500
(815) 964-8738 (Fax)

**Visit Us At:**
**WWW.BESTFIRM.COM**

June 9, 2023

*Via E-Mail*
Mirjana.holick@selective.com
Mirjana Holick
Selective Insurance Company of America
PO Box 7258
London, KY 40742

| | |
|---|---|
| Re: | Elaine Hnyda and Thomas Hynda v. Woodbridge Center Property, LLC |
| Case Number: | MID-L-7222-20 |
| Selective Claim No.: | 22055118 |
| Our File No.: | TGA.23191 |

Dear Mirjana:

I and my firm have been retained as coverage counsel to assist in pursuit of the tender to Selective for Brookfield Properties Retail Inc., Brookfield Properties R LLC, Woodbridge Center Property LLC, Woodbridge Center, LLC, and Boscov's Department Store, LLC (collectively, the "Woodbridge entities") for the underlying lawsuit filed by the Hnyda Plaintiffs ("Hnyda") in the Superior Court of New Jersey, Law Division, Middlesex County, as Docket No. MID-L-7222-20 ("the Hnyda lawsuit"). I am writing in follow up to the various tender communications sent by our clients in regard to the Hnyda lawsuit.

As you know, Liberty Service Sweeping, LLC, your named insured, is a defendant in the underlying lawsuit.

On multiple occasions, including but not necessarily limited to June 9, 2020; October 12, 2020; December 4, 2020; December 7, 2020; December 18, 2020; January 27, 2021; March 19, 2021; April 1, 2021; May 12, 2021; April 26, 2022; August 2, 2022; August 12, 2022; August 16, 2022; August 26, 2022; October 10, 2022; and March 15, 2023; our clients have tendered their defense and indemnity in connection with the Hnyda lawsuit to Selective and also to Liberty Service Sweeping, LLC ("Liberty Service"). We are writing in follow up to the tenders and to reiterate the tender of defense and indemnity for each of the Woodbridge entities to Selective.

As you are aware, on or about December 21, 2017, Woodbridge Center and Liberty entered into a Parking Lot Sweeping and Maintenance Agreement for services at the Woodbridge Mall. The Agreement and other referenced documents

**EXHIBIT**
**F**

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

*Page 2*

were previously provided in prior tender communications, and we have not included additional copies of the same, but if you contend you do not have any document referenced herein, advise and we will provide an additional copy. The Agreement was in effect from January 1, 2018, through December 31, 2020, and thus in effect on the day of the Plaintiff's alleged loss. The Agreement provides that Liberty Service shall sweep the parking lots 7 days a week and shall clean the curb lines, sidewalks, mall entrances, inter alia, free of all trash, sand, garbage, gravel, and debris. Further, Liberty Service shall report any hazardous conditions observed and participate in Woodbridge Center's risk management program.

Pursuant to the Agreement, Liberty Service agreed that it:

> shall, to the fullest extent permitted by law, indemnify, hold harmless, defend and reimburse [Woodbridge Center] [and its affiliates] from and against any and all claims, damages, losses, liabilities, suits, expenses, citations and fines (including attorneys' fees and legal expenses) (collectively, "Claims") which arise out of or ***are in any way connected with***: (i) the Services performed under this Agreement, (ii) any negligence…or omission of [Liberty]…or (iii) any violation of this Agreement by [Liberty].

Moreover, the Agreement included Exhibit B, Insurance Requirements, which set forth various insurance requirements, including but not limited to the following:

> **REQUIRED INSURANCE**
> Service Provider shall furnish and maintain in effect during the term of the Agreement the insurance coverage described below:
>
> **Commercial General Liability**     $2,000,000 Occurrence / $2,000,000 Aggregate
>
> …
>
> **POLICY REQUIREMENTS**
> …
> The Commercial General Liability Insurance required shall name, as "Additional Insureds", Owner (exactly as defined herein), GGPLP REIT Services, LLC, GGP Inc. and General Growth Services, Inc.
> …
> All Insurance policies required by this Agreement shall state that they are primary and not additional to, or contributing with, any other insurance carried by, or for the benefit of the Additional Insureds with respect to the negligence of Service Provider, its employees, agents, contractors and/or subcontractors.
> …

Thus, the Agreement required Liberty Service to furnish and maintain commercial general liability insurance during the term of the Agreement, and name Woodbridge Center,

*Page 3*

GGPLP REIT Services, LLC, GGP Inc., and General Growth Services, Inc., as Additional Insureds under the commercial general liability insurance policy. Further, while Selective has failed to provide a certified copy of its general liability policy to our clients' counsel and to our clients as requested previously, we are confident that Selective's Policy includes additional insured coverage providing the promised additional insured coverage, as well as Supplementary Payment Provision coverage for indemnitees of Liberty Service, as well as coverage for contractual liability in light of the fact that the Agreement qualifies as an "insured contract", as well as other potential sources of coverage for the Woodbridge entities with respect to the Hnyda lawsuit that we reserve the right to identify and address upon receipt of the Selective policy.

In addition, Frank Lombardo was deposed on March 23, 2022, and testified as the part-owner on behalf of Liberty. Mr. Lombardo testified consistently with the language of the Agreement. He confirmed that Liberty was contractually required to observe and report any hazardous conditions at the property and participate in Woodbridge Center's risk management program.

Additionally, as you are or should be aware, on July 22, 2022, and based upon the clear, unequivocal, and undisputable evidence in our clients' favor, the Honorable Judge Bruce J. Kaplan granted the Woodbridge entities' Motion for Summary Judgment in various respects, specifically entering judgment that Liberty Service owes contractual defense to Woodbridge Center Property, LLC; Woodbridge Center, LLC; Brookfield Properties Retail Inc.; Brookfield Properties R, LLC; and Boscov's Department Store, LLC. The Court reserved ruling on the duty to indemnify owed by Liberty Service as the underlying case has not yet been adjudicated to determine the specific amount of indemnity at issue, but it is clear that the Agreement has, as a matter of law, been adjudicated to require defense and indemnity for the Woodbridge entities and that the Agreement's obligations apply to the liability sought to be imposed against the Woodbridge entities in the Hnyda lawsuit.

Despite the multiple tenders, Selective has refused to provide coverage to the Woodbridge entities and refused to accept the tender, despite lacking any good faith basis to decline to accept the tender.

On February 20, 2020, Selective wrote to confirm it had received the Woodbridge entities' tender, but that Selective was not in a position at that time to accept or deny the tender. On October 16, 2020, Selective wrote to advise that based on Selective's investigation, it contended that Liberty Services did not have any obligations to maintain the exterior walkways and parking lot, but again, the allegations of the Complaints, the provisions of the Agreement, and the confirming testimony of the witnesses demonstrates that Liberty Services did indeed have obligations related to the allegations of the Hnyda lawsuit.

On January 27, 2021, you wrote on behalf of Selective and advised that Selective was denying the Woodbridge entities' tender for the Hnyda lawsuit. In that letter, Selective failed to address the policy's anticipated coverage for contractual liability and Supplementary Payment Provision coverage to the Woodbridge entities. However, the letter did discuss one additional insured provision admittedly in the Selective Policy, coverage form CG 7300 (01/19), the Elitepac General Liability Extension, which reportedly contains the following language:

FILED DATE: 7/27/2023 4:21 PM    2023CH06917

*Page 4*

**Blanket Additional Insureds - As Required By Contract**

**A.** Subject to the **Primary and Non-Contributory** provision set forth in this endorsement, **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:
**1.** Your ongoing operations, "your product", or premises owned or used by you;

**Primary and Non-Contributory Provision**

The following is added to Paragraph **4. Other Insurance, b. Excess Insurance** under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

This insurance shall be excess with respect to any person or organization included as an additional insured under this policy, any other insurance that person or organization has shall be primary with respect to this insurance, unless:
**(1)** The additional insured is a Named Insured under such other insurance;
**(2)** You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or non-contributory basis; and
**(3)** The written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

The only reason cited in Selective's January 2021 denial letter for denial of the tender was Selective's argument that "the contract does not specify that the additional insured status be primary and non-contributory which is a requirement of the coverage endorsement", but as cited above from the Agreement, there is plain language in the Agreement requiring the additional insured coverage to be primary and non-contributory. As such, Selective's basis for denying the tender in January 2021 was plainly incorrect. A representative of our clients followed up with Selective asking Selective to address the same point on January 27, 2021; March 19, 2021; and April 1, 2021.

Then, Selective wrote again on April 14, 2021, changing its position, abandoning the earlier plainly incorrect assertion that the Agreement did not require primary and noncontributory additional insured coverage, and now advising that Selective refused to accept the tender for contractual indemnification, because Selective asserted that the indemnification language in the contract failed to meet the requirements of case law, namely *Azurak v. Corporate Property Investors*, 175 N.J. 110 (2003), in that Selective contended that "[f]or any party to be indemnified by another, the agreement must explicitly state that the party to be indemnified is not to be indemnified for their own negligence." We have reviewed the case and disagree with Selective's assertion that the Agreement's language does not support coverage for contractual

defense and indemnity obligations. First, the Court in entering summary judgment in favor of the Woodbridge entities and against Liberty Service has established, as the law of the case, that the Agreement did indeed require Liberty Service to indemnify (at minimum as to defense costs and based on the ruling, inevitably will rule the same as to indemnity for any settlement or judgment) the Woodbridge entities for the liability asserted against each of them, so that is a settled matter already ruled upon by the Court. Second, the indemnity provision in Azurak falls well short of the specific requirements for indemnification set forth in the Agreement in this case, and Azurak does not support Selective's position. In the Agreement, the indemnification obligation imposed on Liberty Service includes the following language clearly requiring Liberty Service to indemnify the Woodbridge entities for their own liability, which is permitted under New Jersey law:

> **B.      Without limiting the generality of the foregoing provisions, Service Provider's obligations to indemnify, hold harmless, defend and reimburse under this Section include any and all Claims arising or alleged to arise wholly or partly out of or in any way connected with the Services, regardless of whether or not such claims are caused or alleged to have been caused in whole or in part by any negligent act or omission of any Indemnified Party; provided, however, to the extent prohibited by applicable law, Service Provider's indemnification and hold harmless obligations herein shall not apply to any such Claim to the extent determined to be actually caused by the negligence of the party seeking to be indemnified.**

In other words, that provision clearly and unambiguously requires Liberty Sweeping to indemnify each Indemnified Party even if the claims are caused in whole, or in part, by the negligence of the Indemnified Party. Then, the provision explains that if applicable law prohibits such an agreement, which is not the case under New Jersey law, then in that scenario, only, would the indemnification obligation not apply to any such Claim to the extent determined to be actually caused by the negligence of the party seeking to be indemnified. As New Jersey law does not prohibit the earlier provision in that paragraph, the Indemnification provision of the Agreement clearly requires Liberty Service to indemnify the Woodbridge entities for their own negligence in connection with the Hnyda lawsuit. *See, e.g., Sayles v. G & G Hotels, Inc.,* 57 A.3d 1129 (2013); *Estate of D'Avila ex rel. D'Avila v. Hugo Neu Schnitzer East,* 121 A.3d 388 (2015). Again, a representative of our clients wrote to Selective and made this point on May 12, 2021, which was not responded to by Selective.

Additionally, Selective argued in the April 2021 denial letter that with respect to additional insured status, "it does not appear as though the accident occurred in whole or in part as a result of the insured's ongoing operations." However, this ignores the fact that no later than June 28, 2021, Selective's named insured, Liberty Service Sweeping, LLC, was added as a direct defendant and specifically alleged to have caused the liability in question in whole or in part as a result of their ongoing operations. As much is confirmed in the Court's granting of summary judgment on the contractual defense issue because Liberty Sweeping is alleged to have caused, at least in part if no in whole, the alleged liability at issue in the Hnyda lawsuit.

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

*Page 6*

It is clear and unequivocal that Selective owes coverage based upon the provisions of the additional insured endorsement language quoted in its January 2021 and April 2021 denial letters, and that Selective's denial of the Woodbridge entities' tenders is without merit, unjustified, and lacks good faith. Selective also owes coverage for the contractual defense and indemnity obligations undertaken by its named insured, Liberty Service, in the Agreement, both based upon the contractual liability coverage given that the Agreement qualifies as an "insured contract" and based upon the Supplementary Payment Provision that provides coverage for an indemnitee of the named insured. Selective has conceded that each of the Woodbridge entities qualifies as an additional insured, or else has waived any such argument by not claiming that any such tendering entity does not qualify as an additional insured in any of Selective's improper prior denial letters. Selective has waived any other coverage defenses by virtue of not raising them. Selective has breached its duty to defend the Woodbridge entities at this point, and thus, the Woodbridge entities are entitled to damages proximately caused by that breach, and we reserve the right to pursue the same should Selective not immediately reverse its prior decisions, and immediately accept the tender of each of the Woodbridge entities, reimburse all defense costs incurred to date, agree to fully pay for all defense costs going forward, and agree to fully indemnify each of the Woodbridge entities for the Hnyda lawsuit.

Please confirm in writing that Selective agrees to reverse its prior decision and accept the tender of the Woodbridge entities as soon as possible, but in any event, within 14 days of the date of this letter. Otherwise, our clients reserve the right to file a declaratory judgment action to seek an order establishing coverage and seeking other damages available under the law.

Should you have any questions regarding the foregoing, please do not hesitate to contact me in our Chicago office.

Very truly yours,

BEST, VANDERLAAN & HARRINGTON

Thomas J. Costello, III

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

| | |
|---|---|
| **From:** | Mirjana Holick |
| **To:** | Tom Costello |
| **Subject:** | RE: Letter to Selective re follow up tender and reiterated demand-06-09-23-959311-01 Re: Woodbridge Center Property, LLC TGA.23191: |
| **Date:** | Thursday, July 6, 2023 3:05:43 PM |

Good afternoon Tom,

We have reviewed your tender dated June 9th and our decision remains the same as my last denial. Please advise if you need a copy of that denial.

Thank you

Mirjana
**Mirjana Holick**
GL Litigation Specialist

Selective Insurance Company of America
P.O. Box 7264
London, KY 40742

| | |
|---|---|
| Phone: | 609-689-7668 |
| | 800-365-9656 |
| Fax: | 877-233-0917 |
| Email: | Mirjana.Holick@Selective.com |

My goal is to provide outstanding service. If you have any feedback, please contact my supervisor, Carl Rivers at Carl.Rivers@Selective.com Thank you very much for doing business with Selective.

CONFIDENTIAL, PROPRIETARY, UNPUBLISHED PROPERTY OF SELECTIVE INSURANCE COMPANY OF AMERICA
USE, DUPLICATION AND DISTRIBUTION RIGHTS LIMITED SOLELY TO AUTHORIZED PERSONNEL.
©2023 Selective Insurance Company of America

**From:** Tom Costello <TCostello@bestfirm.com>
**Sent:** Thursday, July 6, 2023 11:37 AM
**To:** Mirjana Holick <Mirjana.Holick@selective.com>
**Cc:** Tom Costello <TCostello@bestfirm.com>
**Subject:** RE: Letter to Selective re follow up tender and reiterated demand-06-09-23-959311-01 Re: Woodbridge Center Property, LLC TGA.23191:

You don't often get email from tcostello@bestfirm.com. Learn why this is important

External Email – Use Caution

FILED DATE: 7/27/2023 4:21 PM    2023CH06917

Dear Mirjana, please respond and provide us with Selective's position today or tomorrow, if at all possible.

Tom

Thomas J. Costello III
Best, Vanderlaan & Harrington
1755 Park Street, Suite 180
Naperville, IL 60563
Direct – (312) 896-3624
Office - (630) 752-8000
Fax (630) 752-8763
tcostello@bestfirm.com

***Please be advised service of legal documents is not accepted at this email address. Pursuant to Illinois Supreme Court Rules 11 and 131, the only email address at which e-service is accepted is eservice@bestfirm.com.***

**Confidentiality Notice:** *This e-mail transmission (and/or documents accompanying such) contains confidential information and information that may be attorney-client privileged. Such information is intended only for the use of the individual or entity named above. If you are not the named or intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by telephone to arrange for the secure return of these documents. Your cooperation is appreciated.*

**From:** Tom Costello <TCostello@bestfirm.com>
**Sent:** Friday, June 30, 2023 3:43 PM
**To:** Mirjana.holick@selective.com
**Cc:** Tom Costello <TCostello@bestfirm.com>
**Subject:** RE: Letter to Selective re follow up tender and reiterated demand-06-09-23-959311-01 Re: Woodbridge Center Property, LLC TGA.23191:

Dear Mirjana, I have not received any response to this correspondence yet, and it's imperative that we receive Selective's written response as soon as possible, or else I anticipate being asked to file a declaratory judgment action in the immediate future.  Please let me know Selective's response as soon as possible.  Thank you, Tom

Thomas J. Costello III
Best, Vanderlaan & Harrington
1755 Park Street, Suite 180
Naperville, IL 60563
Direct – (312) 896-3624
Office - (630) 752-8000
Fax (630) 752-8763
tcostello@bestfirm.com

FILED DATE: 7/27/2023 4:21 PM   2023CH06917

*Please be advised service of legal documents is not accepted at this email address. Pursuant to Illinois Supreme Court Rules 11 and 131, the only email address at which e-service is accepted is eservice@bestfirm.com.*

**Confidentiality Notice:** *This e-mail transmission (and/or documents accompanying such) contains confidential information and information that may be attorney-client privileged. Such information is intended only for the use of the individual or entity named above. If you are not the named or intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by telephone to arrange for the secure return of these documents. Your cooperation is appreciated.*

**From:** Erica Sanchez <esanchez@bestfirm.com>
**Sent:** Friday, June 9, 2023 3:38 PM
**To:** Mirjana.holick@selective.com
**Cc:** Tom Costello <TCostello@bestfirm.com>; Melody Sprattlin <msprattlin@bestfirm.com>
**Subject:** Letter to Selective re follow up tender and reiterated demand-06-09-23-959311-01 Re: Woodbridge Center Property, LLC TGA.23191:

Dear Mirjana-

At the request of Thomas Costello, I have attached correspondence for your review.  Should you experience any difficulties in opening said attachment, please contact the undersigned.

Thank you,


Erica Sanchez
Best, Vanderlaan & Harrington
25 E. Washington Street, Suite 800
Chicago, IL 60602
312-896-1970 (Direct)
312-819-8062 (fax)
esanchez@bestfirm.com

**Confidentiality Notice**: *This e-mail transmission (and/or documents accompanying such) contains confidential information, and information that may be attorney-client privileged. Such information is intended only for the use of the individual or entity named above. If you are not the named or intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please immediately notify the sender by telephone to arrange for the secure return of the documents. Your cooperation is appreciated*